RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
Fax (302) 651-7701
WWW.RLF.COM

CHAD M SHANDLER
DIRECTOR

Direct Dial
(302) 651-7836
SHANDLER@RLF COM

June 6, 2008

**VIA HAND DELIVERY AND ELECTRONIC FILING**
The Honorable Joseph J. Farnan, Jr.
United States District Court
844 King Street
Wilmington, DE  19801

Re:     ***St. Clair v. L.G. Electronics, et al.,***
           **C.A. No. 06-404-JJF**

Dear Judge Farnan:

　　　　Plaintiff St. Clair Intellectual Property Consultants, Inc. ("St. Clair") respectfully submits this letter to update its present papers in support of its Motion to Lift the Stay in Litigation and to respond to the new arguments raised in Defendants'[1] letter filed with the Court on May 28, 2008.  St. Clair is contemporaneously re-noticing its Motion to Lift the Stay in Litigation to be heard on July 11, 2008.

I.　　　**The Stay Should Be Immediately Lifted: the California Action Is Resolved and Thus the Condition Supporting this Stay Has Been Satisfied.**

　　　　The sole condition for the stay is satisfied.  Defendants concede that the ownership dispute between St. Clair and Eastman Kodak Company ("Kodak") pending in California state court has been resolved.  Kodak has confirmed that St. Clair has been the lawful owner of, and has had good title to, the patents-in-suit[2] since St. Clair's 1995 purchase of the patents from Personal Computer Cameras, Inc.

　　　　With Kodak's admission—signed by Kodak's own Chief Intellectual Property Officer—the resolution of St. Clair's standing and ownership is final.

---

[1] "Defendants" as used herein shall mean the Defendants that joined in the letter filed with the Court on May 28, 2008.

[2] The "patents-in-suit" are: U.S. Patent Nos. 5,138,459; 6,094,219; 6,323,010; and 6,323,899.

The Honorable Joseph J. Farnan, Jr.
June 6, 2008
Page 2

       Now, instead of properly withdrawing their opposition so the stay can be lifted, Defendants seek to further delay this action with arguments that demonstrate a scorched-earth approach to an issue that should not be controversial—the stay should be lifted immediately.[3]

**II.    A Continued Stay of this Action Pending Fuji's Possible Claim-Construction Arguments in Post-Judgment Briefing, Followed Up by a Possible Appeal to the Federal Circuit, Cannot be Justified.**

       A court should exercise its discretion to deny a stay where a stay will not simplify the issues so as to promote the efficient and expeditious resolution of a matter, or where a stay will unduly prejudice one party while giving another an unfair tactical advantage. *See, e.g., St. Clair v. Sony Corp.*, C.A. No. 01-557-JJF (D. Del. 2003), Mem. Order at 2 (D.I. 261). Such is the case here.

       By arguing that the current stay should continue pending the outcome of post-judgment rulings and a possible appeal of this Court's claim construction in the *Fuji* case, Defendants are grasping at meritless defense straws to avoid a reckoning with their willful infringement of St. Clair's patents. A continued stay for this reason (or the other random reasons cited in Defendants' letter) should be denied.

**A.    A continued stay will not promote the efficient proceeding and resolution of this case.**

       Delaying this case to await potential arguments, potential rulings, and a potential appeal on failed claim-construction arguments already considered and rejected by this Court will neither simplify nor expedite the ultimate resolution of this case.

       First, without going into the full merits (which St. Clair reserves the right to do), even if this Court's claim construction is appealed, the Federal Circuit will likely affirm. Claim construction is the exclusive domain of the court. *Markman v. Westview Instruments*, 517 U.S. 370 (1996). Comments made by a Patent and Trademark Office ("PTO") examiner during reexamination proceedings (initiated by Sony) have no bearing on this Court's claim construction rulings. Further, the examiner comments relied upon by Fuji and the other Defendants were made in clear violation of the Manual of Patent Examining Procedure and well-settled law. (*See, e.g.*, Ex. 1.)

       This Court properly construed the claims of the patents-in-suit in the *St. Clair v. Sony* case pursuant to the Supreme Court's mandate in *Markman*. Sony's own expert gave this Court's claim-construction ruling an "A-" in response to this direct questioning from this Court:

---

[3] St. Clair notes that Defendants have not properly moved this Court for the relief they seek.

The Honorable Joseph J. Farnan, Jr.
June 6, 2008
Page 3

> Judge Farnan:        So if you think I got it right, tell us that and
> why. If you think I got it wrong, tell us that and why.
>
>                              …
>
> Professor Dobkin:    I'm comfortable with it, with any of these
> constructions. I didn't feel that your construction got in my way of
> thinking about. There was no point in doing my work on the case
> where I said if only the judge had done this rather than that, things
> would have been easier at this point. If you were a Princeton
> sophomore and wrote this definition description, I would probably
> give you an A minus.

(Ex. 2 at 879–81.)    This Court reaffirmed its initial claim construction in a 66-page
Memorandum Order in the *St. Clair v. Canon* case.

Second, in the unlikely event of new or different claim-construction rulings on
terms of the patents-in-suit, Defendants are absolutely wrong that there would be no
infringement arguments. Again, St. Clair believes that (if appealed) the Federal Circuit will
affirm this Court's extensive, well-reasoned claim construction. Nevertheless, whatever might
happen at the Federal Circuit will not be dispositive of infringement.

### B.    St. Clair will be unduly prejudiced.

The overall prejudice to St. Clair that would result from a continued stay is
significant. St. Clair is a business with employees and overhead and, like any other business,
must generate revenue to continue and grow its operations. St. Clair's business includes the
licensing of technology. Due to Kodak's meritless ownership challenge, St. Clair's licensing
business has been hindered for several years now. Continued delay of this action will bring the
patents-in-suit close to—or past—their 2010 expiration date. This will unduly prejudice St.
Clair's ability to enforce and license its intellectual property.

Moreover, St. Clair is prejudiced because of the collateral effect on its licensees
against competitors who infringe in the marketplace. Eleven digital camera companies have
taken a license under the patents-in-suit. A continued stay will result in significant competitive
injury to these companies.

St. Clair will also be prejudiced by the inability to develop all of the evidence
*available now* to support its claims that Defendants have willfully infringed St. Clair's patents.
The first of the patents-in-suit issued in 1992. Many important facts relevant to the claims in this
lawsuit extend back to this time period. St. Clair should be allowed the opportunity to identify

The Honorable Joseph J. Farnan, Jr.
June 6, 2008
Page 4

and preserve evidence of, for example, knowledge of the patents, copying of the patented technology, and valuation of the patents. Witnesses and documents may be impossible or more difficult to locate. Documents may be lost or destroyed. Memories could fade. The evidentiary prejudice to St. Clair warrants lifting the stay immediately.[4]

### C.    Defendants will gain an unfair tactical advantage.

Defendants' arguments for a continued stay are also made for the tactical advantages that they hope to achieve by further delaying these cases. Clearly, by "waiting in the wings," Defendants seek multiple bites at the apple on defenses that have repeatedly failed in extensive motion practice and in the three jury trials against Sony, Canon, and Fuji.

As explained above, the patents-in-suit are set to expire in 2010. A continued stay would give Defendants another extraordinary tactical advantage because trial following any appeal process (in a potential appeal that has not even materialized) would take place *after* the expiration of the patents-in-suit.

### III.    Defendants' Other Arguments and Defenses Do Nothing to Support a Continued Stay.

The other arguments and defenses offered in Defendants' May 28, 2008 letter are completely irrelevant and, in fact, support lifting the stay now.

### A.    Pretrial discovery can and should proceed.

Defendants' argument that a further stay is justified because "two claim constructions" are being advocated should be rejected. First, if the Defendants wish to pursue a different claim construction they even have access to the alternative arguments rejected by this Court. Second, the notion that this case is "unusually complicated" and that these "large companies with extensive operations" are unable to do discovery and pursue available arguments on claim construction at the same time is nonsensical, given the nature of typical patent litigation and the sophisticated defendant companies and law firms involved.

As to Defendants' comment about this Court managing three cases, St. Clair believes the pretrial matters can be handled efficiently if the parties meet and confer as required by Federal Rule of Civil Procedure 26 and present an appropriate proposed scheduling order.

---

[4] The prejudice to St. Clair due to a continued stay is further illustrated by Defendants' reference to this Court's Order staying the *Samsung* case pending the resolution of the California action. Even though ownership is now resolved, Defendants argue in their letter that they still want to litigate ownership. After already suffering from the delay in the enforcement of its intellectual property rights, St. Clair is now incurring additional litigation expense on this dead issue.

The Honorable Joseph J. Farnan, Jr.
June 6, 2008
Page 5

For example, the three infringement cases could easily be consolidated for discovery purposes. St. Clair and the multiple defendants in the Fuji/Canon cases, for example, prepared a workable schedule. The Defendants have already coordinated defense activities and have demonstrated that they have adequate resources in the number of attorneys and law firms that have made appearances in this case.

>   **B.      Licensing discussions can move forward.**

Contrary to the message in their letter, Defendants know well the value of the patents-in-suit. There have been jury verdicts against Sony, Canon, and Fuji. The patents-in-suit came out of reexamination with all of their claims intact. Eleven of the world's largest digital camera manufacturers have taken a license under the patents-in-suit. Accordingly, Defendants cannot seriously contend that they have no guidance as to the value of the patents-in-suit. Indeed, since the patent examiner's claim-construction comments in reexamination over three years ago, many of the Defendants joining in the May 28, 2008 letter have been in contact with St. Clair about scheduling licensing discussions.

>   **C.      It is frivolous for Defendants to argue that St. Clair must do more to prove its standing before this case proceeds.**

It is utterly frivolous for Defendants to argue that St. Clair must do more to establish standing before the current stay is lifted. As this Court held in denying Canon and Fuji's motion to dismiss for lack of subject matter jurisdiction, St. Clair established that it is the titleholder of record in the PTO. *St. Clair v. Canon*, Inc., C.A. No. 03-241-JJF (D. Del. 2004), Mem. Order at 3–4 (D.I. 812). Accordingly, St. Clair's pleading in this case sufficiently establishes standing to sue the Defendants.

If Defendants wish to challenge St. Clair's ownership or standing, St. Clair will take the position that this defense is barred as a matter of law; however, to the extent that Defendants seek to pursue this defense, they can only raise it if the stay is lifted.

Respectfully submitted,

Chad M. Shandler

CMS:ps
cc:     Clerk of Court (via e-filing)
        Attached Service List

RLF1-3290016-1

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2008, I electronically filed the foregoing letter with the

Clerk of the Court using CM/ECF.

I further certify that I caused copies of the foregoing letter to be served on June 6, 2008 in

the manner indicated to:

**For Aiptek International Inc. and Aiptek Inc.:**
**VIA First Class Mail**
Charlin Chen
Aiptek International Inc.
No. 19, Industry E. Rd. 4
Science-Based Industrial Park, Hsin-Chu
Taiwan

**For Concord Camera Corporation:**
**VIA First Class Mail**
Scott L. Lampert
Vice President and General Counsel
Concord Camera Corp.
4000 Hollywood Blvd., Ste. 650N
Hollywood, FL 33021

**For High Tech Computer Corp., H.T.C. (B.V.I.) Corp., and HTC USA Inc.:**
**VIA First Class Mail**
Hsin Wang
Patent Attorney, Legal Department
High Tech Computer Corp.
23 Hsin Hua Rd., Taoyuan 330,
Taiwan (R.O.C.)

**For Kyocera Wireless Corporation:**
**VIA First Class Mail**
David C. Doyle
Morrison & Foerster
12531 High Bluff Drive, Suite 100
San Diego, CA 92130

**For LG Electronics, Inc., LG Electronics U.S.A., Inc. and LG Electronics MobileComm U.S.A., Inc.:**
**VIA Hand Delivery**
Richard D. Kirk
Bayard, P.A.
222 Delaware Avenue
P.O. Box 900
Wilmington, DE 19801

**VIA First Class Mail**
Anthony C. Roth
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004

**For Motorola, Inc., Petters Group Worldwide, LLC, Polaroid Consumer Electronics, LLC, Polaroid Holding Company and Polaroid Corp.:**
**VIA Hand Delivery**
Jack B. Blumenfeld
Morris, Nichols, Arsht & Tunnell, L.L.P.
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

RLF1-3266335-1

**For Palm, Inc.:**
**VIA First Class Mail**
Bob Booth
Palm, Inc.
950 West Maude Avenue
Sunnyvale, CA 94085

**For Sanyo Electric Co., Ltd. and Sanyo**
**North America Corporation:**
**VIA Hand Delivery**
Steven J. Balick
John G. Day
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

**VIA First Class Mail**
Stuart Lubitz
Hogan & Hartson LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067

**For Deutsche Telekom AG, T-Mobile**
**International AG & Co. KG and**
**T-Mobile U.S.A., Inc.:**
**VIA Hand Delivery**
Melanie K. Sharp
Chad S.C. Stover
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19801

**VIA First Class Mail**
Steven M. Bauer
Proskauer Rose LLP
One International Place
Boston, MA 02110

**For Vivitar Corporation:**
**VIA First Class Mail**
Michael Miller
General Counsel
SYNTAX-BRILLIAN
1600 N. Desert Drive
Tempe, AX 85281

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Chad M. Shandler (#3796)
shandler@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

**ATTORNEYS FOR ST. CLAIR**
**INTELLECTUAL PROPERTY**
**CONSULTANTS, INC.**

RLF1-3266335-1

# Exhibit 1



**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reexamination
of U.S. Patent No. 6,233,010
ROBERTS, et al.

Control No.: 90/006,437

Filed:       October 28, 2002

Art Unit:    2615

Examiner:    Brian C. Genco

Attorney Docket: 9329-001RXQ

<table>
<tr><td colspan="2" align="center"><em>Certificate of Mailing</em><br><em>I hereby certify that this correspondence is being deposited in the United States Postal Service as express mail in an envelope addressed to: Director of the U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450 or facsimile transmitted on the date below.</em></td></tr>
<tr><td><em>Typed or Printed Name:</em> Gordon K. Harris, Jr.</td><td><em>Express Mail</em><br><em>Label No.</em></td></tr>
<tr><td><em>Signature</em></td><td><em>Date:</em>  August 22, 2005</td></tr>
</table>

Director of U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

### RESPONSE TO THE OFFICE ACTION MAILED JUNE 20, 2005

Sir:

In response to the Office Action mailed June 20, 2005, please consider the

following remarks and enclosures.

**Remarks begin on page 2.**

## REMARKS

No claims have been amended. Claim 1 remains under reexamination.

### The Patent Owner Traverses the Examiner's Claim Construction

The Patent Owner respectfully traverses the Examiner's claim interpretation. During reexamination, the Examiner is required to give claims their broadest reasonable interpretation without importing limitations from the specification. As stated in the Manual of Patent Examining Procedure ("M.P.E.P."):

> M.P.E.P. § 2258(I)(G)  During reexamination, claims are given the broadest reasonable interpretation consistent with the specification and limitations in the specification are not read into the claims (*In re Yamamoto,* 740 F.2d 1596, 222 USPQ 934 (Fed. Cir. 1984)).

The Patent Owner respectfully submits that the Examiner has failed to follow this directive on two counts. First, the Examiner has construed the claim term "computer format" more <u>narrowly</u> than reasonably necessary.   Second, the Examiner's construction is inconsistent with the specification and the accompanying claim language itself.

The Patent Owner believes the Examiner has adopted an improperly narrow interpretation of the claims by reading limitations from the specification into the claims. The Examiner has construed the claim limitation "computer format" as "one of an IBM PC/Clone, Apple Macintosh, or other PC format" wherein the Examiner apparently believes that GIFF, TIFF, BMP, JFIF, etc. are not examples of such PC formats. (June 20 Action at 3.)  The words "IBM PC/Clone, Apple Macintosh, or other PC format" do not appear in the claims, and the Examiner's apparent interpretation is thus narrower than the plain meaning of the words in the claims. The portion of M.P.E.P. § 2106 cited by the Examiner provides that claim language may be given a special and narrowed

definition based on the specification only when the patent owner has clearly set forth a definition that differs from ordinary meaning. The Patent Owner nowhere gave the phrase "computer format" a meaning that differs from the full and broad scope of ordinary meaning. It is believed that the Examiner has adopted a particular preferred embodiment to improperly narrow the scope of the phrase "computer format." The Patent Owner provided detailed argument to the District Court in the *Sony* and *Canon* litigations demonstrating the support in the specification for the District Court's claim construction in numerous *Markman* briefs (Pl.'s Opening Claim Constr. Br. (July 1, 2002) (*Sony*); Pl.'s Answering Claim Constr. Br. (Aug. 1, 2002) (*Sony*); Pl.'s Opening *Markman* Br. (Mar. 24, 2004) (*Canon*); Pl.'s Reply *Markman* Br. (Apr. 7, 2004) (*Canon*)).[1] The Patent Owner notes that the District Court confirmed the construction cited by Requester (from the *Sony* litigation) with a further and more detailed claim construction in the *Canon* litigation.

Litigation results aside, it is clear from the specification that image file format selection without reference to the brand of computer that will read the file is also an embodiment of the invention. See Column 2, lines 12-21 of the captioned patent undergoing reexamination, which reads:

> It is the object of this invention to provide an improved electronic still camera with operator selectable picture compression in one of a plurality of <u>operator selectable digital data formats</u> recordable on a standard removeable magnetic diskette common to personal computers.
>
> It is a further object of this invention to provide an improved electronic still camera that provides <u>digital image files for immediate</u>

---

[1] All documents cited in this Response are incorporated by reference and can be found in the binders of supporting material that accompanied the Patent Owner's Reply to the request for information pursuant to 37 C.F.R. 1.105 filed on February 18, 2005.

> and direct incorporation into popular word processing, desktop
> publishing, and other software programs on PCs.

And Column 9, lines 50-53, which reads:

> The Huffman coded image signals are then formatted into a form
> that facilitates format processing into various PC compatible
> formats (GIFF, PICT2, etc.).

And Column 11, lines 1-6, which reads:

> [T]he output of the image compression processor (12) is routed to
> the RAM memory (24) where the compressed image is formatted
> for either the PICT II or GIFF format depending on the setting of
> format switch (17). It should be noted that a large number of image
> formats for PCs exist.

The specification describes in the "BACKGROUND OF THE INVENTION" section that the camera provides a "digital image in a format compatible for immediate use with word processing, desktop publishing, data base, and multi-media applications." Col. 1, ll. 29-32. It is clear that the "format" is "compatible" for software applications such as word processing, desktop publishing, and multi-media applications. Such applications require file formats such as GIFF and PICT. In particular, the specification teaches that in one embodiment "formatting" in an "image file format" such as GIFF or PICT II is a step that occurs before the data are written into the disk input/output interface. See Col. 4, ll. 54-63. One of skill in the art realizes that at least in some embodiments formatting as disclosed is the arrangement of digital image data into an image file format such as GIFF or PICT II independent of the brand of computer that may ultimately read the file. Such a GIFF or PICT II file could, at the time of the application, be read on an IBM or a Macintosh computer.

It is therefore reasonable to construe the claims without reading a limitation as to the brand of computer that will read the file into the claim language. In the specification

taken as a whole, Switch 17 is disclosed to select any of the following: disk format (Fig. 12) image file format (Fig. 2A flag 57; Fig. 6B; Col. 2, ll. 12-21; Col. 9, ll. 50-53; Col. 11, ll. 1-6.) and disk format plus image file format (Col. 11, l. 57-Col. 12, l. 3). Additionally, the disk can be formatted in the Roberts et al. camera before ever taking a picture. *See* Fig. 12 where "PERFORM FORMAT INITIALIZATION" is indicated. One can observe from this figure, moreover, that the user could format a disk in the Roberts et al. camera, remove it, and use it later. In summary, in the Roberts et al. camera, disk formatting and file formatting are discrete and separable operations.

**REJECTION UNDER 35 U.S.C. §102(a).**

Claim 1 stands rejected under 35 U.S.C. §102(a) as being anticipated by WO 90/09717 to Kühberger. The rejection is respectfully traversed.

The Patent Owner appreciates the Examiner's confirmation that Claims 3 and 4 in the co-pending reexamination of related U.S. Patent No. 6,323,899 are allowable over the prior art of record. In stating the reasons for patentability and/or confirmation, the Examiner noted that "Kühberger does not disclose to select one of a plurality of computer formats." (June 20 Action at 5.) Claim 1 of the '010 patent is limited to "formatting [the] digital image signal in one of a plurality of computer formats." The Patent Owner submits that the "plurality" of computer formats in Claim 1 necessarily involves selecting at least one format from at least two formats. Accordingly, Claim 1 of the captioned patent undergoing reexamination is allowable for at least the same reasons as '899 Claims 3 and 4.

Under the Examiner's claim interpretation or under the District Court's claim interpretation, Claim 1 is not anticipated by the "Kühberger" reference (PCT Int'l Pub.

WO 90/09717) because Kühberger does not disclose every claim element. "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." M.P.E.P. § 2131 (quoting *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed. Cir. 1987)). Kühberger is not a "digital camera" as required by Claim 1. Kühberger instead discloses an analog video capture system tethered to a microcomputer. This distinction is important. While component by component, the video capture system of Kühberger contains a lens/CCD capture box, an external analog digital converter box, an external control unit box with LCD menu screen, and a separate microcomputer, these aggregated components cannot be fairly described as a self-contained "digital camera" in a single housing. These aggregated components are collected and used on a desktop, whereas in the Roberts et al. invention, as found by the District Court, all the processing takes place inside the camera.[2]

In contrast to the lack of any limiting definition of "computer format," the specification and file history make expressly clear that all of the elements of the Roberts et al. device patents are found in a single housing. Specifically, during prosecution of related U.S. Patent No. 6,094,219, the applicants distinguished various prior art systems by describing the claimed invention as follows: "The claimed device instead stores a plurality of computer-ready digitized images on removable mass memory elements in the device housing." Amend. C, Paper No. 13 at 8. During prosecution of related U.S. Patent No. 5,576,757, the applicants described their improvement as "eliminat[ing] the need for a physical connection or tether from the camera to the device

---

[2] The Table of Discussed Citations submitted as part of the Patent Owner's Reply to the request for information pursuant to 37 C.F.R. 1.105 filed on February 18, 2005 details where the Kühberger reference was discussed in litigation. These discussions are incorporated by reference.

or unit." Amend. D, Paper No. 17 at 12. These statements are consistent with the specification in that a stated object of the invention is to "provide an electronic still camera that is efficient in design and permits extended periods of <u>portable</u> operation . . . ." Col. 2, lines 59-61. Indeed, "[t]he digital diskette is removable <u>inserted into the</u> <u>housing</u> of the camera prior top [sic] use in recording digital image data." Abstract of related U.S. Patent No. 5,138,459.

The camera of the claims is a self-contained, portable camera that includes all of the claimed structure and performs all of the processes in a single housing. The computer-tethered video capture system of Kühberger seems to operate much like a desktop scanner in that images are generated and formatted by a desktop computer to which the scanner is attached. The Patent Owner thus asserts that Kühberger does not disclose a "digital camera." Because Kühberger does not teach every limitation of this claim, it cannot anticipate.

Additionally, Claim 1 is not anticipated by Kühberger because Kühberger's disclosure is inadequate, internally contradictory, and non-enabling. "The disclosure in an assertedly anticipating reference must provide an enabling disclosure of the desired subject matter; mere naming or description of the subject matter is insufficient, if it cannot be produced without undue experimentation." M.P.E.P. § 2121.01 (quoting *Elan Pharm., Inc. v. Mayo Foundation for Medical and Education Research*, 346 F.3d 1051, 1054, 68 USPQ2d 1373, 1376 (Fed. Cir. 2003)). Because of its mistakes and non-enablement, one of skill in the art could not make and use the Roberts et al. invention based on the Kühberger disclosure. Specifically, the Kühberger figures show that the microcomputer (9) pictured is outside the flow of image data (i.e., the thick arrows).

(Kühberger translation at 13-14.)[3]  The figures indicate that microcomputer (9) controls

the aggregated equipment, but does not participate in processing of digitized data.

Figures aside, Kühberger lacks sufficient detail for one skilled in the art to make the

system described.    The description of Kühberger is particularly confusing in the

description of the CCD/scanner device depicted in the figures.    (*Id.* at 7.)  There is a

CCD (4) and a scanner (5) and the functional relationship between them, if any, is

unclear.  At best, the teachings are sketchy.  At most, the disclosure suggests a video

capture system and invites the reader to provide the necessary details on how to make

and use the suggested system. More importantly, it certainly does not teach how to

make and use the Roberts et al. claimed invention.

The arguments above distinguish Claim 1 over Kühberger regardless of the claim

interpretation applied.  The Patent Owner believes that Claim 1 is patentably

distinguishable over Kühberger without acquiescing on claim interpretation and that

Claim 1 is in condition for confirmation of patentability.

In the alternative, the Kühberger reference is not prior art.  The Patent Owner

submits herewith Declarations of the inventors pursuant to 37 C.F.R. §1.131. Because

the Kühberger reference is not a statutory bar under 35 U.S.C. §§102(b), (c), or (d), the

Patent Owner can overcome a 35 U.S.C. §102(a) rejection by swearing back of the

reference. M.P.E.P. §§ 715 et seq. The attached Declarations show that the inventors

conceived of their invention in the United States prior to the August 23, 1990 publication

date of the Kühberger reference, and that the inventors then diligently worked to reduce

---

[3] The translation cited is that provided by the Requester and used by the Examiner. The Patent Owner
does not necessarily agree with this translation and notes that other translations are available, including
the translation submitted to the Patent Office by the Patent Owner.

their invention to practice by filing their parent application No. 07/615,848 on November 20, 1990. Accordingly, Kühberger is not available as prior art.

As a final matter, the Patent Owner wishes to note that two prior information submissions by the Patent Owner have not been addressed by the Examiner. The first is an Information Submission submitted December 17, 2003 including 26 sheets of Form 1449 listing U.S. and foreign patent documents and other documents. This submission was acknowledged by the Office as "IDS #4" in its Decision Granting Request For Reconsideration and Requiring Information Pursuant to 37 C.F.R. 1.105. The second is an Information Submission submitted May 5, 2005 with 14 pages of Form 1449 listing U.S. and foreign documents and other documents. Receipt of this submission by the Office was acknowledged by return postcard date stamped May 6, 2005, copy attached.

The Examiner is requested to consider the information in both these submissions and acknowledge same by returning initialed copies of the Forms 1449 therefor.

The Patent Owner therefore requests issuance of a Reexamination Certificate. confirming patentability of Claim 1.

Dated: _August 22, 2005_          By: _____

Gordon K. Harris, Jr.
Reg. No. 28615
Attorney for Patent owner

HARNESS, DICKEY & PIERCE, P.L.C.
P.O. Box 828
Bloomfield Hills, Michigan 48303
(248) 641-1600

Exhibit 2

## In The Matter Of:

*St. Clair Intellectual Property Consultants   v.*
*Sony Corporation, et al.*

---

*Trial Volume Number 5*
*February 14, 2003*

---

*Hawkins Reporting Service*
*715 N. King Street, Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697    FAX: (302) 658-8418*

Original File 2141.V1, 206 Pages
Min-U-Script® File ID: 0649919667

## Word Index included with this Min-U-Script®

St. Clair Intellectual Property Consultants   v.
Sony Corporation, et al.

Trial Volume Number 5
February 14, 2003

[9] Q: So let me put this in a very general way, [10] and you've read the Roberts patent?

[11] A: Yes.

[12] Q: Okay. Could you — I guess a good word [13] for you would be could you grade my order in a [14] candid way? In other words, the parties present [15] to the judge words in the patent that they say [16] require construction or interpretation. So then [17] they make a presentation as you know and then the [18] judge decides what he or she thinks the words in [19] the context of the patent mean.

[20] And so this is what I said the words [21] that were in dispute meant. This is how I [22] construed them.

[23] A: Sure. This actually came up during a [24] deposition, something I had talked to the lawyer

------------------------------

Page 880

[1] about and thought a little bit about myself, and

[3] Q: So if you think I got it right, tell us [4] that and why. If you think I got it wrong, tell [5] us that and why.

[6] A: The conclusion I come to, es-pecially for [7] number two, your number two is much more relevant [8] to what I'm talking about than number one is, and [9] it's a subset of number one, anyways.

[10] For number two, there are a variety [11] of different ways to define image file format, [12] just to give another example that's very far [13] afield from this, is we often, you know, sitting [14] with my colleague, we might think of an image file [15] format in terms of what it takes to turn a JPEG [16] into a GIF, the actual software or hardware that's [17] going to

**Trial Volume Number 5**
**February 14, 2003**

St. Clair Intellectual Property Consultants    v.
Sony Corporation, et al.

do that conversion, is that something [18] that has to under how a JPEG is imaged and how a [19] GIF is arranged in order to do the translation, so [20] the argument is that if you don't understand [21] French and German, then it's like that, that way [22] you understand the languages. I may have used [23] something like that to talk about the algorithm [24] rather than what you did.

**Page 881**

[1] I'm comfortable with it, with any of [2] these constructions. I didn't feel that your [3] construction got in my way of thinking about. [4] There was no point in doing my work on the case [5] where I said if only the judge had done this [6] rather than that, things would have been easier at [7] this point. If you were a Princeton sophomore and [8] wrote this definition description, I would [9] probably give you an A minus.

**Min-U-Script®**