## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC. | ) ) ) | **REDACTED PUBLIC VERSION** |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-404-LPS |
| PALM, INC., KYOCERA WIRELESS CORPORATION, KYOCERA COMMUNICATIONS, INC., VIVITAR CORPORATION, PETTERS GROUP WORLDWIDE, L.L.C., POLAROID CONSUMER ELECTRONICS, L.L.C., POLAROID HOLDING COMPANY, POLAROID CORP., HTC CORPORATION, H.T.C. (B.V.I.) CORP., and HTC AMERICA, INC., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### HTC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT

ASHBY & GEDDES
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Of Counsel:*

Thomas G. Pasternak
Huan-Yi Lin
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
(310) 734-1930

*Attorneys for Defendants HTC Corporation, H.T.C. (B.V.I.) Corporation, and HTC America, Inc.*

Dated:  August 26, 2011

{00549573;v1}

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.    ARGUMENT ..........................................................................................................2

    A.    ST. CLAIR'S NEW EXPERT REPORTS SHOULD BE STRUCK UNDER
        RULE 37. .....................................................................................................2

    B.    ST. CLAIR CREATED THIS SITUATION BY CHOOSING NOT TO
        ASSERT ALTERNATIVE INFRINGEMENT THEORIES....................................4

    C.    THE COURT SHOULD DISMISS ST. CLAIR'S CASE AS A MATTER
        OF LAW UNDER EITHER THE OLD OR THE NEW THEORY........................7

        1.    The Undisputed Facts Require Summary Judgment of Non-
            Infringement Under the Old Theory. ...........................................................8

        2.    The Undisputed Facts Require Summary Judgment of Non-
            Infringement Under the New Theory...........................................................9

III.    CONCLUSION......................................................................................................11

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Brooks v. Price,*
121 Fed. Appx. 961 (3rd Cir. 2005)................................................................2

*Finch v. Hercules Inc.,*
No. 92-251 MMS, 1995 WL 785100 (D. Del. Dec. 22, 1995).....................4

*Hayes v. Smithkline Beecham Corp.,*
No. 07-CV-682-CVE-TLW, 2009 WL 3415210 (N.D. Okla. Oct. 26, 2009)...........3

*Nicholas v. Pa. State Univ.,*
227 F.3d 133 (3rd Cir. 2000) ......................................................................3

*Procter & Gamble Co. v. McNeil-PPC, Inc.,*
615 F. Supp. 2d 832 (W.D. Wis. 2009) ......................................................5

*Rambus, Inc. v. Infineon Techs. AG,*
145 F. Supp. 2d 721 (E.D. Va. 2001) .........................................................5

*Smithkline Beecham Corp. v. Ranbaxy Labs., Ltd.,*
No. 03-2158 (MLC) (D.N.J. Feb. 22, 2006) ...............................................3

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc. (Fujifilm),*
Nos. 2009-1052, 2010-1137, 2010-1140, 2011 WL 66166 (Fed. Cir. Jan. 10, 2011)...........6-9

*Thomas v. Arn,*
474 U.S. 140 (1985)....................................................................................6

*Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.,*
109 F.3d 739 (Fed. Cir. 1997)......................................................................3

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.,*
270 F. Supp. 2d 519 (D. Del. 2003).............................................................4

*Xerox Corp. v. Google, Inc.,*
No. 10-136 (LPS) (D. Del May 19, 2011) ...................................................4

**FEDERAL STATUTES**

28 U.S.C. § 636(b)(1)(C) ...................................................................................6

**FEDERAL RULES**

FED. R. CIV. P. 1..................................................................................................2

FED. R. CIV. P. 26(a) ..................................................................................................2

FED. R. CIV. P. 37..............................................................................................1, 3, 5, 6

FED. R. CIV. P. 37(c)(1)............................................................................................2

## I.    INTRODUCTION

In its attempt to keep this case alive, St. Clair has misstated both the law and facts and mischaracterizes and ignores the Federal Circuit's claim construction holding.  The following table provides an initial illustration of St. Clair's most troubling misstatements.

| St. Clair's Claim | The Reality |
|---|---|
| • Rule 37 sanctions require bad faith | • Bad faith **or** willfulness is but one of the factors to be considered, along with prejudice and the ability to cure that prejudice |
| • The Federal Circuit has not changed the governing claim construction here | • The governing claim construction is dramatically different, causing St. Clair to assert a new theory of infringement |
| • The District Court's claim construction was the law of the case when the parties exchanged expert reports | • The Magistrate's Report and Recommendation on Claim Construction had not been ruled on by the district court when the parties exchanged expert reports |
| • St. Clair "could not have been expected to address proposed claim constructions that were all different" | • The Defendants submitted one Markman brief that advanced one claim construction. |
| • The Federal Circuit held that there need not be more than one still image file format, but only multiple data formats. | • This statement is in direct contradiction to the Federal Circuit's decision.  The Federal Circuit explicitly noted that the specification of the four patents-in-suit describes a single invention and that this invention related to digital image signals. |

St. Clair asserts, with a straight face, that starting this case again "is not unfair or prejudicial" to HTC.  Ans. Br. (D.I. 794) at 4.  All that has to happen, it asserts, is the submission of new technical and damages expert reports, and discovery by the parties relating to the new technical expert reports.  St. Clair goes on to propose that "HTC *could* then file its own technical expert report(s) and depose the technical and damages witnesses" (emphasis added), as if it would be a possibility for HTC not to do so.  *Id.*

St. Clair's view of what is not unfair or prejudicial is astonishing, as it plainly admits that it is seeking to have the entire case relitigated.  HTC has already once done precisely what St. Clair

envisions happening again here, and a suggestion that the parties should be required to engage in substantial additional discovery is offensive to the basic principles of fairness and efficiency that govern federal civil litigation. Rule 1 of the Federal Rules of Civil Procedure makes clear that the Federal Rules are designed to "secure the just, speeding, and inexpensive determination of every action and proceeding."

St. Clair's motion to "supplement" is actually an attempt to replace wholesale its infringement theory, with a new set of experts and expert discovery. St. Clair was obligated to disclose any and all infringement theories and expert opinions—under HTC's proposed constructions as well as its own—during discovery, as the Court did not enter its decision on claim construction until after St. Clair had served its opening expert report on infringement. Despite the fact that claim construction was a live issue at the time, despite its knowledge of Defendants' proposed constructions, which had previously been adopted by the U.S. Patent and Trademark Office, and despite the fact that the Court's previous claim construction was on appeal to the Federal Circuit, St. Clair made the deliberate decision to assert only a single infringement theory. It must live with that decision.

## II.    ARGUMENT

### A.    ST. CLAIR'S NEW EXPERT REPORTS SHOULD BE STRUCK UNDER RULE 37.

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See also Brooks v. Price*, 121 Fed. Appx. 961, 964-65 (3rd Cir. 2005) (affirming exclusion of expert witness who did not serve a timely report). As St. Clair recognizes, in the Third Circuit, the determination of whether a party's failure to make required disclosures was substantially justified or harmless is guided by consideration of:

(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3rd Cir. 2000).

Consideration of those factors makes it clear that St. Clair should be precluded from offering entirely new infringement theories at this stage. St. Clair ignores all but one factor and wrongly asserts that bad faith is required for a Rule 37 sanction. That is not the law or the proper analysis for this matter.

Reopening fact and expert discovery would be incredibly prejudicial to HTC, prejudice that cannot be cured, as the result would be extensive delay and expense. *See, e.g., Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997) (affirming exclusion of expert affidavit and report containing new opinions and information, which were submitted after the deadline for expert reports, due to the delay and expense that would result). In particular, expert discovery in patent cases "must be done in an orderly fashion so as not to incur duplicate costs. . . . [A]llowing additional reports on new opinions would unduly prejudice the parties and would disrupt the orderly and efficient trial of the case"; Memorandum Opinion at 7, *Smithkline Beecham Corp. v. Ranbaxy Labs., Ltd.*, No. 03-2158 (MLC) (D.N.J. Feb. 22, 2006) ("Allowing the use of new materials even to support existing opinions could trigger an endless wave of supplemental reports and the need for additional depositions, all of which would be costly for defendant"); *Hayes v. Smithkline Beecham Corp.*, No. 07-CV-682-CVE-TLW, 2009 WL 3415210, at *2 (N.D. Okla. Oct. 26, 2009) (as amended). HTC has already incurred the burden and expense of producing documents, formulating non-infringement positions, preparing expert reports, conducting expert depositions, drafting summary judgment motions, and preparing pretrial filings, including selecting trial exhibits. Forcing it to repeat that work and incur the expense of trial

preparation twice over would constitute serious prejudice. Moreover, beyond the prejudice resulting from increased costs is the spectre of a damages verdict based on the new theory, which otherwise would not have happened. The prejudice of conducting repeat litigation and the potential damages cannot be cured by postponing trial or permitting HTC to supplement their own expert reports. The financial burden cannot be undone.

Permitting St. Clair to identify new experts, introduce new opinions, and proceed on a new infringement theory now would also impose an unfair burden on the Court, as "fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities. Accordingly, the flouting of discovery deadlines causes substantial harm to the judicial system." *Finch v. Hercules Inc.*, No. 92-251 MMS, 1995 WL 785100, at *9 (D. Del. Dec. 22, 1995) (citations omitted) (internal quotation marks omitted). What St. Clair proposes is the antithesis of orderly and efficient case management, and the Court should no more suffer the burden of repetitive litigation than HTC.

### B. ST. CLAIR CREATED THIS SITUATION BY CHOOSING NOT TO ASSERT ALTERNATIVE INFRINGEMENT THEORIES

St. Clair acknowledges that in Delaware, when claim construction remains an open issue at the time the parties are scheduled to serve expert reports, the parties have an obligation "to prepare for the fact that the court may adopt the [other party's claim] construction." *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 270 F. Supp. 2d 519, 523-24 (D. Del. 2003) (Robinson, J.). If a party fails to do so by, for example, declining to assert alternative infringement theories, Rule 37 prohibits the party from belatedly asserting a new infringement theory in the case. *Id.*; *see also* Transcript of Claim Construction Hearing at 11, *Xerox Corp. v. Google, Inc.*, No. 10-136 (LPS) (D. Del May 19, 2011) (noting that parties "regularly" have to write expert reports with alternative constructions when the Court does not issue its claim construction decision

before expert reports are due); *Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 731-32

(E.D. Va. 2001) (recognizing that because the *Markman* hearing would be conducted after expert

discovery, "it was incumbent upon [the patentee] to have [its expert] examine [defendant's] claim

construction and offer alternative opinions on infringement and validity."). As one court

explained, faced with a patentee who attempted to "supplement" its expert reports with new

theories based on defendant's claim constructions and the doctrine of equivalents:

> [Plaintiff's] experts had the benefit of defendant's claims construction briefs and
> knew what limitations could be found in the disputed claim terms. Although they
> did not believe that any of these limitations were present, they were not precluded
> from offering their opinions on the proposed constructions in the alternative. In
> addition, if plaintiff's experts believed in December that the accused product
> infringed under the doctrine of equivalents, they should have said so at that time.
> ***The failure to address these issues in the initial expert reports was plaintiff's***
> ***choice. It was not dictated by defendant or this court. Plaintiff cannot now seek***
> ***to alter its strategy without a showing of good cause, which it has failed to make***.

*Procter & Gamble Co. v. McNeil-PPC, Inc.*, 615 F. Supp. 2d 832, 838-40 (W.D. Wis. 2009)

(emphasis added).

St. Clair refers to *Union Carbide* as "an appropriate evidentiary ruling." Ans. Br. (D.I.

794) at 20. It stands to reason, therefore, that St. Clair would have asserted its "new" infringement

theory in the Gafford Report, in the alternative, to preserve its argument in the event that

Defendants' Computer Architecture Construction was adopted—either by this Court or the Federal

Circuit. Instead, St. Clair chose to file expert reports on one infringement theory, ***despite knowing***

***that claim construction had not yet been resolved in this case***, and despite knowing that

Defendants were asserting the construction that was adopted by the PTO and ultimately by the

Federal Circuit.

**REDACTED**

**REDACTED**

Ignoring this case law—all of which was cited in Defendants' opening briefs for summary judgment of non-infringement—St. Clair repeatedly and incorrectly asserts that the District Court's claim construction was the "law of the case" during discovery, so St. Clair was not obligated to offer infringement contentions or disclose an infringement theory under Defendants' proposed constructions. St. Clair is just wrong. When it served its infringement expert report on January 11, 2010, the claims had not been construed. Rather, there was a Report and Recommendation regarding claim construction that was objected to by Defendants, *but which had not been ruled on by the Court*. *See, e.g.,* 28 U.S.C. § 636(b)(1)(C) (requiring *de novo* review by the district court of any issues or recommendations to which a party objects); *Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("The district judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment. Any party that desires plenary consideration by the Article III judge of any issue need only ask."). Indeed, the Court did not enter a claim construction order until February 25, 2010, *six weeks after St. Clair served its infringement expert report*.

St. Clair also protests that it "could not have been expected to address proposed claim constructions that were all different . . . ." Plaintiff's Opening Brief in Support of its Motion to Supplement Expert Reports to Address the Federal Circuit's Claim Construction Modifications at 11, *St. Clair Intellectual Prop. Consultants, Inc. v. Palm, Inc.*, No. 06-404-LPS (D. Del. July 15,

2011). Notably, however, Defendants in this case submitted one Markman brief that advanced one claim construction: the Computer Architecture Construction. St. Clair presents a single sentence of the Federal Circuit's *Fujifilm* decision as its claim construction ruling, and on that basis claims that the Federal Circuit left the definition of "data format" undisturbed. Ans. Br. (D.I. 794) at 7. If this were true, it would only provide further reason why St. Clair could have and should have disclosed its new infringement theory in its prior expert reports. St. Clair's argument, however, plainly disregards the fact that the Federal Circuit expounded at length on the meaning of the disputed claim terms, and it is disingenuous to ignore the bulk of its discussion of these terms in favor of a single sentence which sums up that analysis. *See, e.g., St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc. (Fujifilm)*, Nos. 2009-1052, 2010-1137, 2010-1140, 2011 WL 66166, at *3 (Fed. Cir. Jan. 10, 2011) (explaining that the problem the inventors sought to solve was "computer architecture incompatibility, not data format incompatibility," and that they did so by providing a "one-to-one correspondence between computer architecture and format code.").

Even worse, St. Clair's infringement theory relating to MMS and SMTP is based on a clear misstatement of the Federal Circuit's decision. St. Clair incorrectly argues that the Federal Circuit held that there need not be more than one still **image** file format, but only multiple **data** formats. This is in direct contradiction to the Federal Circuit's decision. Specifically, the Federal Circuit explicitly noted that the specification of the four patents-in-suit describes a single invention and that this invention related to digital **image** signals. *Id.* at *5-7. St. Clair also ignores the obvious point that the Federal Circuit construed data format to exclude movie formats. *Id.* at *7.

## C.    THE COURT SHOULD DISMISS ST. CLAIR'S CASE AS A MATTER OF LAW UNDER EITHER THE OLD OR THE NEW THEORY.

The Court should grant HTC's motion for summary judgment of non-infringement, whether in view of St. Clair's original theory, or its new theory, if it is allowed to introduce it here.

**REDACTED**

1.     **The Undisputed Facts Require Summary Judgment of Non-Infringement Under the Old Theory.**

All of the asserted claims contain the limitation "a plurality of data formats," or a close variation of that limitation. Each data format of the plurality must be a still image data format corresponding on a one-to-one basis to a different type of computer architecture. *Id.*  **REDACTED**

**REDACTED**

REDACTED
The Federal Circuit construed **that each of "a plurality of data formats" has to correspond on a one-to-one basis to a different type of computer architecture**. *Fujifilm*, 2011 WL 66166, at *3.  In addition, the Federal Circuit excluded movie formats from the scope of "a plurality of data formats." *Id.* at *7.  **REDACTED**

REDACTED

### 2.    The Undisputed Facts Require Summary Judgment of Non-Infringement Under the New Theory.

St. Clair's new infringement theory is that HTC smartphones infringe because they can send a JPEG image file via both MMS (Multimedia Messaging Service) and email, and thus send messages using "a plurality of data formats."  St. Clair has twisted the Federal Circuit's claim construction beyond recognition, now asserting that the delivery format for transmission, and not the format of the image file itself, is what is at issue in the claim.  This new theory has nothing to do with the Roberts patents or the Federal Circuit's claim construction, however, and this Court should reject it as a matter of law.

The Roberts patents relate to an electronic camera and the processes that occur in an electronic camera, including generating digital image signals, formatting them in a selected format, and then storing the image file in memory.  The Roberts patents disclose nothing about the use of cell phones to deliver image files to recipients.  What they are about, as the Federal Circuit recognized, are the image file formats in cameras (such as GIFF for IBM and PICT for Apple) used to format digital image signals and to store them in memory. *See, e.g., id.* at *4.  The patents

have nothing to do with the delivery formats (such as MMS and email) used to deliver the image file to recipients. The Roberts patents teach providing users a plurality of image file formats for selection to be compatible with the image format inputable into different types of personable computers. *See, e.g., id.* at *1 ("All four patents share a common specification and cover electronic 'still video cameras' that save digital photographs in user-determined memory formats for use on personal computers ('PCs')."). The Federal Circuit also emphasizes that the asserted claims should be limited to a single image or picture, in part because "all the terms describing formatting issues refer to images." *Id.* at *7 (citing '219 Patent col. 12, ll. 48-49 (formatting "*each* digitized captured *image*.")). The variations used in other asserted claims supports this holding: claim 1 of the '010 patent using "formatting said digital image signal in one of a plurality of computer formats;" claim 1 of the '899 patent using "formatting the digital image signal in one of a plurality of computer image file formats;" and claim 3 of the '899 patent using "selecting one of a plurality of computer image file formats in the camera; . . . formatting the digital image signal in the selected computer image file format." The "plurality of different data formats" in the asserted claims are limited to still picture formats, and have nothing to do with delivery format, as St. Clair now contends.

A comparison between conventional cameras, electronic digital cameras, and HTC smartphones illustrates the difference between image file format and delivery format. With conventional cameras, one uses negative films to take pictures and develop them into paper copies. Then, one may decide to do nothing further. Or one can hand deliver the paper picture to a friend or ship it via UPS or FedEx. To ship the paper picture, one places it into an envelope before delivery. The envelope includes both the sender's and the recipient's name and address. Upon receipt, the recipient opens the envelope to retrieve the picture. Similarly, with electronic digital

cameras, one can format the digital image signals as a JPEG (or GIFF or PICT) image file.  Then one may decide to do nothing further.  Or one can upload the JPEG image file to a computer or send a removable memory card with the JPEG image file to a friend via UPS or FedEx.  **REDACTED**

**REDACTED**

**REDACTED** Selection between MMS and email has nothing to do with computer architecture.  MMS and email are not a plurality of data formats that correspond on a one-to-one basis to different types of computer architecture.

## III.   CONCLUSION

For all these reasons, HTC respectfully requests that this Court preclude St. Clair from proffering new infringement contentions, reopening discovery, and redoing expert reports and that it grant summary judgment of non-infringement for HTC.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants HTC Corporation,*
*H.T.C. (B.V.I.) Corporation, and HTC*
*America, Inc.*

*Of Counsel:*

Thomas G. Pasternak
Huan-Yi Lin
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
(310) 734-1930

Dated:  August 26, 2011

{00549573;v1}                                                    Page 12

# EXHIBITS A – D

# REDACTED IN THEIR ENTIRETY